Robert A. Mittelstaedt #060359
Caroline N. Mitchell #143124
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
ramittelstaedt@jonesday.com
cnmitchell@jonesday.com
Telephone: (415) 626-3939
Facsimile: (415) 875-5700

Thomas F. Cullen, Jr. (admitted *pro hac vice*)
Michael L. Kolis (admitted *pro hac vice*)
JONES DAY
51 Louisiana Ave., N.W.
Washington, DC 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

Deborah Scott #800300
6001 Bollinger Canyon Rd., Room C2192
San Ramon, CA 94583
deborah.scott@chevron.com
Telephone: (925) 842-3413
Facsimile: (925) 842-4562

Attorneys for Defendants
TEXACO INC., TEXACO PETROLEUM
COMPANY and CHEVRON CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE I, et al., | **Case No. C-06-2820 WHA** |
| Plaintiffs, | **REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT OR, IN THE ALTERNATIVE, TO STAY** |
| v. | |
| TEXACO, INC., TEXACO PETROLEUM COMPANY, INC. and CHEVRON CORPORATION, | Date: July 20, 2006<br>Time: 8:00 a.m.<br>Courtroom: 9, 19th Floor<br>Judge: Hon. William H. Alsup |
| Defendants. | |

Plaintiffs try to avoid dismissal of their two causes of action by creating two new expansive theories of liability, contrary to all precedent. Their "unjust enrichment" claim does not work in the context of personal injury allegations, and no court has ever so applied it. Their claim under the California's Unfair Competition Law does not work because their theory is that Chevron's public statements in defense of the action in Ecuador were designed to induce Californians—not plaintiffs—to buy Chevron gasoline. Moreover, their claim to a "restitutionary award of profits" does not constitute money or property sufficient to give them standing under the UCL.

In the alternative, if plaintiffs could state a valid claim, they would be engaged in classic claim-splitting and forum-shopping for which a stay would be a partial remedy. Contrary to plaintiffs' assertion that they have never been "involved" in any litigation against defendants, the *Aguinda* and Lago Agrio complaints were brought on behalf of the 30,000 Oriente residents and their communities, including plaintiffs.

## I. PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT FAILS; THE "WAIVER OF TORT" DOCTRINE DOES NOT APPLY.

The complaint fails to state a valid claim under the "waiver of tort" doctrine because the allegations do not establish that plaintiffs conferred any benefit on defendants or that defendants "misappropriated" any "legally protected interest" of plaintiffs that is recognized as a permissible basis for an unjust enrichment claim. Opp., p. 11. Plaintiffs' concocted "interest in freedom from bodily harm," (*id.*), is not mentioned in the complaint, is not a "legally protected interest" that can be appropriated by a defendant, and cannot be the basis of a right to restitution. Indeed, plaintiffs do not cite any case in any jurisdiction where restitution has been awarded for causing "bodily harm" to a plaintiff.

The "waiver of tort" doctrine traditionally applies to the appropriation of well-established, transferable rights such as those regarding possession, use, and control of real, personal, or intellectual property. In those circumstances, a court may "imply a contract (or rather, a quasi-contract)" and award restitution "where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct." *McBride v. Boughton*, 123 Cal. App. 4th 379, 388

Case3:06-cv-02820-WHA Document52 Filed07/06/06 Page3 of 9

(2004).[1] In a case of conversion of goods, for example, the plaintiff may bring an action against the defendant as if the goods had been sold and delivered. *See* 1 Witkin, *Summary of California Law* § 1040 (10th ed. 2005) (citing cases). A wrongful occupant of real property likewise can be sued under an implied contract that obligates him to pay the owner the reasonable value of the use. *See Samuels v. Singer*, 1 Cal. App. 2d 545, 554 (1934).

The "waiver of tort" doctrine does not extend beyond cases involving misappropriation of property to the personal injury context or other contexts where no consideration moves from plaintiff to defendant. For example, when a defendant commits a tort causing bodily injury, such as in "an assault and battery or negligence case," the plaintiff "must simply rely on the tort" claim rather than on a restitution claim, because there is nothing that is "moving to the defendant, to support the implied promise to pay therefor." *Allen v. Powell*, 248 Cal. App. 2d 502, 510 (1967). *See also Gold v. Los Angeles Democratic League*, 49 Cal. App. 3d 365, 376-77 (1975) (rejecting attempt to "waive the tort of interference with a prospective advantage" absent allegation of "consideration moving from plaintiff to defendants"; "such an allegation is impossible because of the nature of the underlying tort"). As plaintiffs' own sources recognize, therefore, "when defendant saves money by failing to take some safety precaution, courts have not allowed plaintiff to recover the savings as profits from the wrong." Douglas Laycock, *The Scope and Significance of Restitution*, 67 Tex. L. Rev. 1277, 1290 (1989). "[W]here a manufacturer saves expenses necessary to assure the safety of a product it increases the risk to consumers and obtains a benefit in the process. However, the heightening of this risk does not amount to the appropriation of a property interest; it thus does not establish a basis for restitution to the consumer of the value of the benefit." Daniel Friedmann, *Restitution of Benefits Obtained*

---

[1] No choice-of-law analysis is required because plaintiffs invoke only California law, which—for the reasons set forth in the text—does not authorize their unjust enrichment claim. If it were otherwise, defendants would request that the Court determine Ecuador restitution law pursuant to Federal Rule of Civil Procedure 44.1.

2 REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT Case No. C-06-2820 WHA

*Through the Appropriation of Property or the Commission of a Wrong*, 80 Colum. L. Rev. 504, 531 (1980) (footnotes omitted).[2]

Plaintiffs do not cite any precedent for a restitution award based on bodily injury. Instead, the cases on which they principally rely were brought by plaintiffs whose property interests were appropriated by the defendant's activity. In *Schwan v. CNH America LLC*, No. 4:04 CV 3384, 2006 WL 1215395 (D. Neb. May 4, 2006), plaintiffs alleged that defendants' pollution caused them bodily harm, and they based their *tort* claims on that bodily harm, but their *unjust enrichment* claim was allowed to proceed under Nebraska law because "'Defendants used Plaintiffs' property to dispose of pollutants.'" *Id.* at *34 (quoting *Branch v. Mobil Oil Corp.*, 778 F. Supp. 35, 35-36 (W.D. Okla. 1991)); *see id.* at *25. *See also Cassinos v. Union Oil Co.*, 14 Cal. App. 4th 1770, 1776, 1788 (1993) (by injecting wastewater from offsite wells, oil-and-gas lessee appropriated from mineral estate owner the "right to inject offlease wastewater," which lessee did not enjoy under oil and gas lease; proper measure of damages was amount lessee would have had to pay others to dispose of the wastewater); *N.C. Corff P'ship, Ltd. v. Oxy USA, Inc.*, 929 P.2d 288, 291 (Okla. Ct. Civ. App. 1996) (claim under Oklahoma law by property owners based on pollution by lessee). On the other hand, in the multitude of cases with essentially the same fact pattern alleged here—the defendant saved money by causing or not preventing a condition that ultimately causes bodily harm to the plaintiff—one cannot find a single instance of a restitution award under the "waiver of tort" doctrine, or otherwise. Plaintiffs' argument here, which necessarily would authorize an election of restitution in all such cases, lacks any foundation in logic or law.

Contrary to plaintiffs' intimation (Opp., p. 10), *Daniels v. Williams*, 720 F.2d 792 (4th Cir. 1983), has nothing to do with unjust enrichment or "waiver of tort." *Daniels* was a Section

---

[2] Plaintiffs theorize (p. 13 n.6) that they could have contracted with Texaco to permit Texaco to "cause them bodily harm" and thus the Court should infer such a contract and on that basis require defendants to build a medical clinic in Ecuador from their profits. Far from aiding plaintiffs, their argument—premised on an implausible contract to permit bodily harm—illustrates the inapplicability of the unjust enrichment or quasi-contract theory to claims for bodily injury.

1983 case by a prisoner alleging he fell on a pillow left on stairs by a deputy sheriff, and held that a post-injury hearing constituted due process. As a prelude, the court found that bodily injury from a state official's negligence implicates the liberty interest protected by the Fourteenth Amendment, and noted—in the footnote cited by plaintiffs—that "some" unspecified bodily injuries also implicate a property interest as reflected in the common law tort action to recover damages. That is a far cry from suggesting, much less holding, that the "waiver of tort" doctrine applies in cases of bodily injury.[3]

In essence, under plaintiffs' approach, any aggrieved person could claim an "interest" in "freedom" from whatever harm the defendant caused, and then claim that the defendant has "appropriated" that interest by causing the harm. If that approach were valid, it would have been simple enough for the plaintiffs in *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275 (S.D.N.Y. 1998), to say that the defendant stockbrokers appropriated an interest of the plaintiffs in not being sold "toxic" securities. *Id.* at 285; *see id.* at 312 (dismissing unjust enrichment claim notwithstanding that sales to plaintiffs were "deal drivers" that enabled brokers to make profitable sales to other customers). Like *Granite Partners*, this case should be dismissed because the mere allegation that defendants were enriched at plaintiffs' expense is insufficient to demonstrate an appropriation by defendants of a legal interest belonging to plaintiffs.

Finally, plaintiffs' request (Opp., p. 14 n.7) for leave to amend if the Court finds that they must allege a tort is misguided. Plaintiffs' problem is not just the failure to allege a tort; it is that the unjust enrichment doctrine does not apply where plaintiffs are claiming only bodily injury and thus have not conferred any cognizable benefit on defendants.[4]

---

[3] If the right to bring a lawsuit for damages is the property right that plaintiffs claim was infringed, the claim would be frivolous on its face. Nothing in the complaint suggests that defendants did anything to stop plaintiffs from exercising any and all of their legal rights.

[4] The courts are divided over whether a separate cause of action for unjust enrichment exists under California law in any circumstances, even for misappropriation of property interests. *Compare McBride*, 123 Cal. App. 4th at 387 ("Unjust enrichment is not a cause of action, however, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies."); *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("[T]here is no
(continued)

II. **PLAINTIFFS DO NOT HAVE STANDING UNDER THE CALIFORNIA UNFAIR COMPETITION LAW.**

The second cause of action alleges that defendants engaged in an unfair business practice by denying liability for the claims asserted in the Lago Agrio matter. Apart from the problems inherent in seeking what in effect would be a gag order applicable to that litigation, plaintiffs' claim fails at the outset because they lack standing to bring it. Plaintiffs allege that defendants' statements were intended to induce Californians to buy Chevron gasoline and stock. Complaint, ¶ 108. But they do not allege that they were among the persons so induced. Thus, they have not "lost money or property as a result of [the alleged] unfair competition"—one prerequisite for standing under Cal. Bus. & Prof. Code section 17204 (2006).

In response, plaintiffs string together various broad statements about the UCL and repeat their allegations and arrive at their punch line. They argue that their "cancers and other latent diseases" give them a "'vested interest' in a restitutionary award of profits from Defendants . . . that is sufficient to satisfy the UCL's current requirement of actual damage." Opp., p. 22 (citing the statute and *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003)). In substance, plaintiffs are trying to use their demand for disgorgement of $4 billion in the first cause of action to give them a "vested interest" in that money for purposes of the second cause of action.

A demand for damages, however, does not create a vested interest in those damages. "A 'vested' interest is one that is 'unconditional,' 'absolute,' and 'not contingent.' . . . A contingent interest, on the other hand, is dependent upon an uncertain future event." *Pegasus Satellite Television, Inc. v. DirecTV, Inc.*, 318 F. Supp. 2d 968, 979 (C.D. Cal. 2004). In *Korea Supply*, 29 Cal. 4th at 1140-42, the defendant allegedly paid bribes to secure a government contract that otherwise would have been awarded to a competitor whose agent, the plaintiff, lost a $30 million

---

cause of action in California for unjust enrichment."); *Enreach Technology, Inc. v. Embedded Internet Solutions, Inc.*, 403 F. Supp. 2d 968, 976 (N.D. Cal. 2005) ("unjust enrichment is not a recognized cause of action in California") *with, e.g., Nordberg v. Trilegiant Corporation*, Civ. A. No. C-05-3246 MHP, 2006 U.S. Dist. LEXIS 15756, at *43-44 (N.D. Cal. Apr. 4, 2006).

commission. The Court held that plaintiff had "at most . . . an 'expectancy'" interest in the commission and that "[s]uch an attenuated expectancy cannot . . . be likened to 'property'" subject to a restitutionary award under the UCL. *Id*. at 1149-50.

Here, plaintiffs do not have an unconditional ownership interest in the $4 billion they demand. As in *Korea Supply,* they have at most an "attenuated expectancy." Indeed, they do not even have a vested interest in their purported right to demand disgorgement. "[N]umerous courts have held that the right to recover specific types of damages is not a vested right because . . . a state and its people may alter such rights." *Savnik v. Hall*, 74 Cal. App. 4th 733, 738-39 (1999).

Plaintiffs' proposed bootstrap turns the UCL on its head. It is precisely because "the UCL 'is not an all-purpose substitute for a tort or contract action'" that the California Supreme Court has limited the remedies available. *Korea Supply*, 29 Cal. 4th at 1150. Under plaintiffs' theory, anyone with a tort or contract claim could instead sue under the UCL's streamlined procedures and claim a "vested" interest in the damages they would have recovered had they brought their claim in tort or contract. This would completely undermine the established rule that "damages cannot be recovered" under the UCL. *Id*. at 1144.[5]

Plaintiffs offer no answer to our related showing that they fail to show that the statements at issue invaded any legally protected interest—another prerequisite of UCL standing. *See* Mot., pp. 8-9.

## III. ALTERNATIVELY, PLAINTIFFS DO NOT REFUTE THE REASONS FOR A STAY.

If plaintiffs were able to state a valid claim and avoid outright dismissal, it would be appropriate to stay this action pending the resolution of related proceedings in Ecuador and New York. Plaintiffs' only answer to the alternative stay request is their lawyers' declaration that

---

[5] Contrary to plaintiffs' argument (Opp., p. 21), *In re Firearm Cases*, 126 Cal. App. 4th 959, 978 (2005), does not relieve them of, or lessen, their burden of showing causation. In fact, *In re Firearm Cases* held that causation is a necessary element of a UCL claim, and dismissed plaintiffs' claims because they "failed to present any evidence . . . that defendants' business practices caused or were likely to cause substantial injury." *Id*. at 981. "Without evidence of a causative link between the unfair act and the injuries or damages, unfairness by itself merely exists as a will-o'-the-wisp legal principle." *Id.* at 978.

1  plaintiffs have never been "involved" in other litigation against defendants and thus are not
2  splitting their cause of action. Opp., p. 23. This is form over substance because the *Aguinda*
3  and Lago Agrio lawsuits, just like this lawsuit, were brought by Mr. Bonifaz putatively on behalf
4  of the same 30,000 Oriente residents. Mot., pp. 3-4. Plaintiffs do not and cannot deny that it is
5  claim-splitting, and forum-shopping, when a lawyer files first a class action for 30,000 persons
6  and then, after a *forum non conveniens* dismissal, files a "collective" action seeking remediation
7  for all allegedly affected communities—and then, in the midst of the collective action, files on
8  behalf of the same class a third action purporting to waive torts and seeking a different and
9  competing remedy.[6]

10  Beyond their false denial that this case is duplicative of others brought by the same
11  plaintiffs based on the same allegations, plaintiffs offer no opposition to the stay. Plaintiffs'
12  arguments regarding *Colorado River* and international comity abstention are irrelevant. Opp.,
13  p. 24. Defendants are not asking the Court to abstain under those doctrines, only to stay the case
14  under the Court's inherent power to do so. *See, e.g., Michelson v. Citicorp Nat. Servs., Inc.,* 138
15  F.3d 508, 513-16 (3d Cir. 1998) (distinguishing ordinary stay from *Colorado River* abstention).
16  Plaintiffs concede that the Court has inherent power to stay a case "when appropriate," Opp.,
17  p. 23 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (Cardozo, J.)), and they do not
18  dispute that splitting a cause of action between two courts is a classic basis to stay the second-
19  filed action. Plaintiffs should not be allowed to waste judicial resources (in addition to
20  defendants' resources) while other United States and foreign courts decide the same, and related,
21  issues. Thus, if it is not dismissed, this case should be stayed.

---

[6] Far from denying this procedural history, Mr. Bonifaz acknowledges that "[f]ollowing the dismissal in New York, I … retained Ecuador counsel in order to recommence the *Aguinda* litigation in Ecuador … [as a] kind of collective action to seek environmental remediation on behalf of all residents of the affected area." Declaration of Cristóbal Bonifaz in Support of Plaintiffs' Renewed Motion to Proceed with Action Using Pseudonyms, 6/9/06, par. 11, Document 35. He also admitted, according to a press report, that he filed this action three years later "out of frustration at the progress of the case in Ecuador." Carla Bass, *Ecuador Amazon residents file US lawsuit against Chevron*, Platts Commodity News, Apr. 25, 2006 (Mot. Ex. 2). And Mr. Bonifaz does not dispute that his "frustration" in Ecuador coincided with the termination of his representation by the lead plaintiff group there.

Dated:  July 6, 2006                                                                 JONES DAY

                                                                                     By:/s/ Robert A. Mittelstaedt

                                                                                     Attorneys for Defendants

SFI-544482v1