United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE I–V AND JOHN DOE I–IV, on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>TEXACO, INC.; TEXACO PETROLEUM CO. AND CHEVRON CORP.,<br><br>Defendants. | No. C 06-02820 WHA<br><br>**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO STAY** |

**INTRODUCTION**

In this action alleging environmental harm to the Ecuadorian rainforest, defendants move to dismiss the complaint. They seek a stay of the case if the dismissal is not with prejudice. Plaintiffs fail to state a claim. Defendants have not justified a stay. The motion to dismiss therefore is **GRANTED**. The motion for a stay is **DENIED**.

**STATEMENT**

In 1971, defendant Texaco Petroleum Co. (Texpet) began pumping crude oil from beneath the Ecuadorian rainforest. Texpet was a subsidiary of defendant Texaco, Inc. Along with the oil, Texpet extracted water contaminated with heavy-metal salts and petroleum. Under standard oil-industry procedures at the time, this "produced water" would have been reinjected into the well. Texpet, however, put this contaminated water in open pits. The run-off flowed into nearby wetlands and rivers. This practice continued until 1992. By using this practice

1  instead of reinjecting the wastewater, Texpet saved itself $1.4 billion to $5.6 billion (Compl. ¶¶
2  2, 19, 25, 30–31, 47–48, 50, 54).*

3        People living in the region where this oil-drilling took place often drink and bathe in
4  such contaminated waters, due to a lack of other water supplies. The contamination contained
5  carcinogenic organic compounds and hydrocarbons. Ingestion of these chemicals by residents
6  of the area has raised their average risk of cancer to between 12 and 1,000 cancers per million
7  exposures, at least twelve time the accepted risk under U.S. Environmental Protection Agency
8  standards. Four of the plaintiffs, Jane Does I–IV, have contracted cancer caused by exposure to
9  these toxins released by Texpet. Another five of the plaintiffs have family members with such
10 cancers and are at heightened risk of contracting similar cancers. Plaintiffs sue as
11 representatives of a putative class of 30,000 people (Compl. ¶¶ 8–16, 74–75, 77–78, 88).

12       In 1993, a group of Ecuadorians, purporting to represent a plaintiff class, sued Texaco in
13 the United States District Court for the Southern District of New York. That action was
14 dismissed on *forum non conveniens* grounds, on the condition that Texaco agree to litigate the
15 issues in Ecuador. *See generally Aguinda v. Texaco, Inc.*, 303 F.3d 470, 473 (2d Cir. 2002).

16       In 2000 or 2001, Texaco merged with defendant Chevron Corp. Texpet's shares are
17 wholly owned by Chevron or one of its subsidiaries. Since the merger, Chevron has made
18 statements denying that Texpet's conduct in Ecuador was responsible for environmental and
19 health problems region where it drilled for oil. Chevron knew those statements were false or
20 misleading. It made such statements to induce Californians to buy its products and to protect
21 the value of its stock (Compl. ¶¶ 18–19, 80, 107–108).

22       In 2003, a group of Ecuadorians brought a lawsuit in Ecuador seeking injunctive relief
23 that would include a clean up of the polluted areas and payment for 10 percent of the total repair
24 work (Mittelstaedt Decl. ¶ 1, Exh. 1 (Compl., *Aguinda v. ChevronTexaco* Corp., Super. Ct. of
25 Nueva Loja, Lago Agrio, Province of Sucumbios, Ecuador; May 7, 2003).

---

27 * All facts are taken from the complaint. On a motion to dismiss, "allegations of material fact are taken as true and construed in the light most favorable to Plaintiffs." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136,
28 1140 (9th Cir. 1996).

2

In 2004, ChevronTexaco Corp. and Texpet commenced an arbitration proceeding against Petroecuador, claiming a right to indemnification for their costs and expenses in connection with the litigation brought in Ecuador. The Republic of Ecuador and Petroecuador sued to stay the arbitration. *See generally Republic of Ecuador v. ChevronTexaco Corp.*, 376 F. Supp. 2d 334 (S.D.N.Y. 2005). That action is still pending. Civil Docket Sheet, *Republic of Ecuador v. ChevronTexaco Corp.*, No. Civil 04-8378 LBS.

Plaintiffs bring two claims in the instant action. In count one of the complaint, plaintiffs allege that defendants were unjustly enriched. Count two alleges that they violated California Business and Professions Code Section 172000, the Unfair Competition Law (Compl. ¶¶ 99, 109).

**ANALYSIS**

A motion to dismiss a complaint for failure to state a claim can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "All allegations of material fact [must be] taken as true and construed in the light most favorable" to the plaintiff. However, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

**1.   UNJUST ENRICHMENT.**

A party may be required to make restitution if it is unjustly enriched at the expense of another. A person is enriched if he receives a benefit at another's expense. *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996). If a party has suffered certain torts, it may waive the tort and sue for unjust enrichment. In doing so, the plaintiff is consenting to the taking of his or her property, thus nullifying the tort and affirming the act of the wrongdoer. The plaintiff therefore becomes entitled to treat the tort as a sale of his or her property and to seek to recover the property's value under an implied contract of sale. *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hill*, 9 Cal. 2d 495, 499 (1937). A plaintiff may only elect to waive the tort, however, if there is

3

1  no adequate tort remedy. *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App.
2  3d 1120, 1140 (Cal. Ct. App. 1986).

3   Plaintiffs contend that Texpet was unjustly enriched at their expense because the
4  company wrongfully invaded "their legally protected interest in freedom from bodily harm"
5  (Opp. 10).

6   Plaintiffs do not state a valid claim for unjust enrichment. The extra profits that
7  defendants gained by letting contaminated water run into the wetlands and rivers of Ecuador
8  were not conferred upon them by plaintiffs. Plaintiffs do not cite to any decision addressing —
9  much less upholding — a complaint that stretched a personal-injury tort claim into a claim of
10 unjust enrichment simply because the alleged tortfeasor got a benefit that was incidental to the
11 injury. In the absence of California authority on point, this order declines to extend the theory
12 of unjust enrichment to the scenario alleged in the complaint.

13   Additionally, plaintiffs do not adequately plead or argue that they have no adequate
14 remedy at law. They allege that they have no adequate legal remedy because the injuries they
15 suffered "cannot be undone by mere compensation" (Compl. ¶ 100). The inability of cash to
16 cure cancer or reduce plaintiffs' risk of cancer does not make damages an inadequate remedy.
17 If it did, many people who suffered a personal injury would be able to seek disgorgement of
18 profits rather than compensatory damages. In their brief, plaintiffs claim that legal remedies
19 also are inadequate because (1) seeking them might require filing individual actions, rather than
20 the instant class action,(2) because such individual actions would be "prohibitively expensive
21 and complex," and (3) because the equitable remedy they seek — a fund to build medical
22 facilities — is superior than damages. They argue that damages would be inadequate because
23 "a money judgment would be of a [sic] little use to Plaintiffs in the absence of a trustee to
24 ensure that medical facilities are established" (Opp. 14–15). None of these reasons demonstrate
25 that plaintiffs lack a remedy at law. It is possible both to pursue a class action and to seek
26 individual damages. *See generally* Alba Conte & Herbert B. Newberg, *Newberg on Class*
27 *Actions* § 10:1 (4th ed. 1992). Furthermore, the Court is not persuaded by counsel's assertion
28 that the members of the class would prefer the establishment of medical facilities to the receipt

4

1 of damages. For example, class members who have not developed cancer but merely suffer
2 increased risk of it might prefer cash. In any case, the mere fact plaintiffs might prefer the
3 equitable remedy over the legal remedy does not make the legal remedy inadequate as a matter
4 of law.

### 2. UNFAIR COMPETITION LAW.

Actions alleging violations of the Unfair Competition Law may be brought "by any person who has suffered injury in fact and has lost money or property as a result of such unfair competition." Cal. Bus. & Prof. Code § 17204. In the instant action, plaintiffs do not allege that they lost money or property as a result of Chevron's false statements about the environmental and health harms in Ecuador. For plaintiffs to prevail, they would have to claim that their cancer or increased risk of cancer caused them to lose property or money and that the false statements caused the cancer or increased risk thereof. Such a contention would be patently absurd and appears nowhere in the complaint.

In addition, the "as a result of" language in the statute means that, for a plaintiff to state a claim, he or she must allege that they *relied* upon the defendant's acts of unfair competition and, *as a result*, suffered injury in fact. *Pfizer v. Super. Ct. of L.A. County*, No. B188106, ___ Cal. Rptr. 3d ___, 2006 WL 1892581 at *9 (Cal. Ct. App. July 11, 2006). Plaintiffs here do not allege that they suffered cancer or increased risk of cancer due to misleading statements made by Chevron. Their claim founders on this silence. Contrary to counsel's argument, the statutory language does not somehow disappear just because the instant action is not a "consumer" case.

Plaintiffs also argue, however, that defendants deprived them of their vested property interest in restitution from Chevron, Texaco and Texpet. They claim that they had a vested interest in the award due to the wrongful acts of Texpet and Texaco. They assert that, if Chevron had not misrepresented Texpet's and Texaco's record in Ecuador, the corporation would have been forced to pay restitution. By relying on the false statements, however, they avoided having to make payment (Opp. 22–23). Plaintiffs' counsel is stretching legal argument to its breaking point. Plaintiffs had no vested interest in restitution. Such an interest can only

5

become vested after a judgment is entered. Plaintiffs do not allege any judgment was ever entered against defendants in connection with health impacts from oil drilling in Ecuador, much less a judgment in favor of plaintiffs. Even if there were such a judgment, Chevron's false and misleading statements would not be the reason for defendants' failure to satisfy it. Plaintiffs are unable to cite any decisions on point and supporting their position. For these reasons, plaintiffs have not stated a valid claim for violation of the Unfair Competition Law.

### 3. REQUEST FOR STAY.

Defendants also request that the instant action be stayed. They state this request as an alternative to dismissing the action with prejudice. The Court will grant dismissal with leave to amend. This order therefore considers the propriety of a stay.

Defendants claim that a stay should be imposed pursuant to the Court's inherent authority to manage the case because plaintiffs may be forum shopping and splitting their cause of action between the instant action and the proceeding in Ecuador. Plaintiff's counsel, Cristóbal Bonifaz, however, stated that "no Plaintiff in this action has ever been a party in any litigation, past or presently pending, in any forum, against Defendants" (Bonifaz Decl. in Support of Pls.' Motion to Proceed With Action Using Pseudonyms ¶ 2). Defendants do not refute Mr. Bonifaz's declaration with anything more than speculation. Plaintiffs who have never before sued over the instant matters cannot split claims or forum shop in the ways defendants accuse them of doing. A stay, therefore, is not justified.

**CONCLUSION**

Plaintiffs have failed to state any claim on which relief could be granted. The motion to dismiss the complaint is therefore **GRANTED**. Plaintiffs somehow may be able to surmount the seemingly impossible barriers they have to stating a valid claim. They are therefore granted leave to amend. Any amended complaint must be filed and served by **AUGUST 5, 2006**. Please do not ask for extensions The motion for a stay is **DENIED**.

If plaintiffs do not file an amended complaint by August 5, this action will be dismissed with prejudice. It therefore make little sense to proceed with plaintiffs' motion to be allowed to proceed with this action pseudonymously. The hearing on that motion, set for August 17, 2006,

6

is therefore continued to 8 a.m., September 28, 2006. The hearing, of course, will be vacated if this action is dismissed for failure to file an amended complaint.

**IT IS SO ORDERED.**

Dated: July 21, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7