IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE I–V, AND JOHN DOE I–IV,<br><br>Plaintiffs,<br><br>v.<br><br>TEXACO, INC., TEXACO PETROLEUM CO., AND CHEVRON CORP.,<br><br>Defendants.<br>_____/ | No. C 06-02820 WHA<br><br>**ORDER DENYING PLAINTIFFS' MOTION AND RENEWED MOTION TO PROCEED WITH ACTION USING PSEUDONYMS** |

**INTRODUCTION**

In this action alleging vast ecological and health damage from the dumping of oil-production byproducts into the Amazon rainforest, the nine Ecuadorian plaintiffs seek to continue their action using pseudonyms rather than disclosing their identities. Defendants oppose this motion, saying it hinders their ability to mount a defense.

**STATEMENT**

Plaintiffs filed their original complaint pseudonymously on April 25, 2006, and filed their amended complaint on July 28, 2006. Plaintiffs allege that by unlawfully dumping oil-drilling byproducts in the Oriente region of the Ecuadorian rainforest, defendants Texaco, Inc. ("Texaco"), Texaco Petroleum Co. ("Texpet"), and Chevron Corp. ("Chevron") caused cancer in plaintiffs and increased their risk of cancer. Plaintiffs allege defendants Texaco and Texpet are liable because of their own acts and/or omissions while they allege defendant

1  Chevron is liable as a successor-in-interest. Plaintiffs alternatively allege that Chevron is liable
2  because Texaco and Texpet are their alter-egos. After amending their original complaint,
3  plaintiffs now assert claims of negligence, international or reckless infliction of emotional
4  distress, and battery.

5      In both their original and amended complaints, plaintiffs state that they brought the
6  action anonymously "due to fear of retaliation, including physical retaliation, against
7  themselves and their families for their commencement of this action." Plaintiffs base this fear
8  on the lawlessness of the region of the Oriente rainforest where they live, "such that if their
9  identities and addresses are disclosed publicly, Plaintiffs would become likely targets for
10 violence and/or harassment from any number of local actors with a political, economic, or
11 emotional stake in this controversy." Plaintiffs cite four potential sources of harassment in the
12 instant motion (Amd. Compl. ¶ 17).[1]

13     Plaintiffs state that if their identities were revealed they "would face a risk of
14 intimidation and harassment from rogue elements of the Ecuadorian military." They also allege
15 that their fear is credible because four prominent players in similar litigation, two lawyers and
16 two indigenous leaders, have petitioned the Organization of American States' Inter-American
17 Commission on Human Rights for protection. The other case, the *Lago Agrio* litigation, was
18 brought originally as two cases in the Southern District of New York in 1993 and 1994.
19 The district court consolidated the two cases, and subsequently dismissed them on *forum non*
20 *conveniens* grounds. The *Lago Agrio* case is currently pending before an Ecuadorian court
21 (Bonifaz Decl. ¶ 5–11). Plaintiffs similarly "face a risk of intimidation and harassment from the
22 Frente for the Defense of the Amazon (the "Frente")." Plaintiffs fear that the Frente will harass
23 them if they knew their identities. Lastly, plaintiffs cite the potential danger of Colombian
24 paramilitary and other criminal groups kidnapping them for ransom. Plaintiffs propose a

---

[1] Pursuant to the May 2006 order, plaintiffs have refiled their motion to proceed pseudonymously. The order allowed plaintiffs to refile their original motion and give notice to defendants unless they could satisfy the *ex parte* requirements of Civil Local Rule 7-10. The order also required plaintiffs to submit evidence to support their factual contentions.

2

protective order that would only allow defense counsel to learn the identities of the plaintiffs (Br. at 6, 7).

Defendants assert that plaintiffs have not carried their requisite burden in seeking to use pseudonyms, since they have not presented sufficient admissible evidence to support their motion to proceed pseudonymously. Specifically, defendants challenge the number of and content of plaintiffs' declarations — only four of the nine filed declarations, in contrast to the eight declarations filed in opposition to defendants' motion to dismiss, and the fact that the substantive portions of the four submitted declarations are identical. They also argue that Mr. Bonifaz's entire declaration should be stricken. They challenge the basis for his statements in the declaration, as well as his use of newspaper articles to support his statements. They argue that the newspaper articles are hearsay, and are thus inadmissible for the truth of the matters asserted. Finally, defendants argue that the prejudice to defendants and the public's interest in knowing plaintiffs' identities outweigh plaintiffs' speculative concerns about potential threats.

## ANALYSIS

Before this order evaluates whether plaintiffs have presented sufficient evidence to justify the use of pseudonyms, it will address defendants' admissibility concerns — whether the Bonifaz declaration, offered in support of plaintiffs' motion, must be stricken under Civil Local Rule 7-5(b) for containing inadmissible evidence. Defendants also challenge the substantive nature of plaintiffs' declarations, but plaintiffs' use of identical language is not grounds for striking their declarations.

1. **MUST THE BONIFAZ DECLARATION BE STRICKEN TO THE EXTENT IT CONTAINS INADMISSIBLE EVIDENCE?**

While plaintiffs try to dismiss defendants' arguments in its opposition to the renewed motion to proceed pseudonymously as "red herring admissibility issues," the rules governing admissibility of evidence are intrinsic to our judicial system and are very important. Civil Local Rule 7-5(b) mandates that declarations only contain facts and conform as much as possible to FRCP 56(e). FRCP 56(e) requires that declarations be based on personal knowledge and contain only admissible evidence. Civil Local Rule 7-5(b) additionally states that declarations must avoid conclusions and argument. Any statement made must specify the information or

3

1  belief the declarant bases his or her statement upon. If the declaration is not in compliance, the
2  declaration may be stricken either in part or in whole. Civ. L.R. 7-5(b). While Mr. Bonifaz
3  may have some personal knowledge of the situation due to his prior work in the region,
4  declarations may only contain admissible facts. One question is whether the newspaper articles
5  he offers to support his statements are admissible as evidence or whether they are inadmissible
6  as hearsay.[2]

### A. Admissibility of Newspaper Articles.

Plaintiffs defend their use of the newspaper articles under Federal Rules of Evidence 803(8), 902(6), and 807. *First*, they argue that newspaper articles fall within the public records exception of Rule 803(8). Plaintiffs cite Rule 902(6) for their proposition that the articles fall within this exception. Rule 902(6), however, is irrelevant to this assertion because Rule 902 concerns the authentication of written materials. Simply because newspaper articles do not need authentication does not mean they automatically fall within the Rule 803(8) public records exception. The Rule 803(8) exception is reserved for documents that detail the activities of an office or agency, or are matters observed pursuant to a duty imposed by law requiring that party report those matters (although police reports do fall outside this exception, and police officers are required to testify in court to what is stated in their reports). Newspaper articles do not fall anywhere within this definition.

Plaintiffs' only other argument is that these articles fall within the residual-hearsay exception.[3] Rule 807 permits a court to allow statements into evidence not specifically covered by Rule 803 or 804 when the statements have equivalent circumstantial guarantees of trustworthiness. The court must make three determinations if it is to allow an exception like this. *First,* the statement must be offered as evidence of a material fact. *Second,* the statement

---

[2] There is also the question of whether the declarations Mr. Bonifaz makes are based on his personal knowledge or rather on information and belief. This order will not reach that argument because, as explained below, plaintiffs fail to carry this burden even assuming all of the evidence they present is admissible.

[3] Plaintiffs' citation to Federal Rules of Evidence 803(24) in their reply to defendants' opposition to plaintiffs' motion to proceed pseudonymously is incorrect. Federal Rule of Evidence 803(24) became its own rule, Rule 807, in 1997.

4

must be more probative on the point for which it is offered than any other evidence which the proponent could procure through reasonable efforts. *Third,* the general purposes of the rule of evidence and the interests of justice must best be served by admission of the statement into evidence.

Here, the newspaper articles are being offered as evidence of a material fact: Whether plaintiffs have an objectively reasonable fear of retaliation for filing this lawsuit. With regard to the second inquiry, whether newspapers are more probative of the situation than other evidence that could be procured through reasonable efforts, plaintiffs could have submitted declarations from their own plaintiffs, or from individuals in the Oriente region testifying to these events. Furthermore, plaintiffs' attorneys could have contacted the *Lago Agrio* attorneys and asked for declarations from them stating what the *El Comercio* article stated — that they have contacted the Inter-American Commission on Human Rights seeking protection because they fear for their lives (Bonifaz Decl., Exh. D). This is reasonable, especially considering that attorney Bonifaz worked on the case and presumably has a professional relationship with those attorneys. In our country, newspapers are famously unreliable. *See Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 619 (1974). We have no reason to believe they are more accurate in South America. The hearsay rule is crucial to our judicial system because it protects the opportunity for cross-examination before one can assess the credibility or reliability of that witness's testimony. It would thwart the purposes of that rule and the interests of justice to allow these newspaper articles to be entered into evidence for the truth of the matters asserted. Because plaintiffs' newspaper articles do not fall within any exception to the hearsay rule, they are stricken from the Bonifaz Declaration as required by Civil Local Rule 7-5(b).

**2.    MAY PLAINTIFFS USE PSEUDONYMS IN THIS ACTION?**

The Ninth Circuit does allow the use of pseudonyms in unusual cases where concealing a party's identity is necessary to protect that party from "harassment, injury, ridicule, or personal embarrassment." *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981); *Does I thru XXIII v. Advanced Textile*, 214 F.3d 1058, 1068 (9th Cir. 2000). The use of

5

pseudonyms is reserved for the rare cases because of two reasons. One, the use of fictitious names runs afoul of FRCP 10(a); FRCP 10(a) mandates that all names of the parties be included in a complaint. Two, the public and the parties have the common law right to know the identity of the parties in a judicial proceeding. *Advanced Textile* sets the controlling legal standard for "a district court's discretionary decision to permit a party to proceed anonymously." *Advanced Textile*, 214 F.3d at 1067, 1068.

Courts must employ a balancing test in determining whether plaintiffs should be allowed to use pseudonyms. ". . . [A] party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." In determining the need for anonymity, the district court should evaluate: (1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation. The court must consider the precise prejudice such a motion would work on defendants at each stage of the proceedings. The balance may change at different points of the proceeding. Additionally, the court is to determine how the public's interest in the case would best be served. *Advanced Textile*, 214 F.3d at 1068, 1069.

In *Advanced Textile*, the plaintiffs were factory workers in Saipan, the main island in the Northern Mariana Islands. About half of the factory workers in Saipan were non-resident foreign workers, recruited in their home countries. They were induced into signing specific employment contracts that, among other things, required the employee to return to his/her home country when his/her employment ended. The plaintiffs' class action lawsuit was against defendant factories for violations of the Fair Labor Standards Act. The plaintiffs had filed declarations of garment workers detailing the particular risks they faced if their identities were disclosed. Managers had been actively trying to dissuade their workers from speaking with lawyers and being involved in the lawsuit. The workers were threatened with "various reprisals, including termination, blacklisting, deportation, and closing the factory. There is also testimony that employers made oblique threats of physical harm to employees who complained about working conditions." *Advanced Textile*, 214 F.3d at 1063, 1065.

6

1 The Ninth Circuit held that the named plaintiffs in the action had demonstrated "an
2 objectively reasonable fear of extraordinarily severe retaliation," and that the plaintiffs could
3 proceed under pseudonyms at least until the district court ruled on the plaintiffs' motion for
4 notice to potential class members. The court thoroughly analyzed each factor relevant in the
5 balancing test. *First,* the court held that the threat of economic harm was a cognizable form of
6 retaliation, and that the threatened economic harm was sufficiently severe. *Second,* the
7 plaintiffs' fears were objectively reasonable as specific threats had been made against them.
8 The plaintiffs had been "interrogated about, warned against, and threatened for making
9 complaints about their working conditions by defendants and recruiting agents. Threats ran the
10 gamut . . . ." There was additionally evidence to suggest that the Chinese government would
11 carry out these threats in China after the Chinese workers in Saipan were returned to their
12 countries. *Third,* the plaintiffs were vulnerable to retaliation by the defendants because the
13 defendants had the power to terminate the plaintiffs at will and have them deported almost
14 immediately. *Fourth,* there was no prejudice to the defendants in allowing the plaintiffs to
15 proceed pseudonymously at the current stage of the proceedings — although the court did state
16 that "it may be necessary [at a later point] to reveal plaintiffs' identities to defendants so that
17 defendants may refute [certain claims]." *Fifth,* the public's interest was satisfied by allowing
18 the plaintiffs to proceed pseudonymously because the public had an interest in not chilling
19 employees' willingness to challenge violations of their rights by their employers.
20 *Advanced Textile*, 214 F.3d at 1063, 1070, 1073.

### A. Severity of the Threatened Harm.

Here, the harm is not specific. Plaintiffs fear an alleged "risk of intimidation and harassment from rogue elements of the Ecuadorian military." They make allegations that the Ecuadorian military, acting for defendant Chevron, "will subject them to violence and harassment" similar to that suffered by the two attorneys and two indigenous leaders in the *Lago Agrio* litigation. Plaintiffs similarly face "a risk of intimidation and harassment from the Frente . . . a militant organization . . . ." They also "would face a substantial risk of kidnapping

7

1 for ransom and other violence from Colombian paramilitaries and other criminal groups that
2 operate freely in the Oriente" (Br. at 6, 7).

3       Plaintiffs, however, do not cite any specific harm other than the "substantial risk of
4 kidnapping" by Colombian paramilitary and criminal groups. Plaintiffs have not cited any
5 *specific* threats made against them.[4] The insinuation is that the harm would be quite severe
6 although plaintiffs never state this explicitly.

### B. Reasonableness of the Fear.

Plaintiffs must show that their fears are objectively reasonable. Here, plaintiffs do not cite any objective reasons for this fear in their declarations. The declarations, which come from only four of the nine plaintiffs, are identical in their content. Each plaintiff states: "I wish . . . instead of using my name in all legal pleadings a pseudonym be used as I fear that poorly informed persons might threaten me or do me harm. The people of this region live in a state of complete suffering and constant danger due to the petroleum pollution and no one can prevent what they might do to me." These declarations do not rise to the level of the *Advanced Textile* declarations where workers mentioned specific threats made against them. Plaintiffs make circuitous references to vague threats that appear to be based more on where they live than any specific threats made against them.

Furthermore, it is unclear why the Frente would want to harm plaintiffs. While plaintiffs' counsel refers to problems between himself and the Frente leading to their parting ways — opposing counsel in the *Lago Agrio* litigation misstating Mr. Bonifaz's position, in an allegedly malicious fashion (Bonifaz Supplemental Decl. ¶ 3) — and new counsel taking over the *Lago Agrio* litigation, it does not necessarily follow that the Frente would harm plaintiffs. Any problems the Frente have are with Mr. Bonifaz, not plaintiffs. The reasons for this potential harassment are not clear, even with this alleged defamation of

---

[4] While plaintiffs assert that they do not need to prove they face a danger of physical injury (Br. at 8), their quote skips an important phrase. The Ninth Circuit was referring to the fact that they found the threat of economic harm through deportation, arrest and imprisonment sufficient — that was why those plaintiffs did not need to prove a danger of physical injury. Here, however, plaintiffs presumably argue they face risks of physical harm. It is precisely because they have not made any specific allegations of any specific threats that it is difficult to evaluate the severity of any threatened retaliation.

8

Mr. Bonifaz's character. Plaintiffs are no longer bringing a class action suit and thus represent no threat to the Frente's hopes of becoming the trustee of any settlement fund from the *Lago Agrio* litigation.

No harm came to the plaintiffs in the *Lago Agrio* litigation, as far as this record shows. If those named plaintiffs have been able to live their lives freely, without being harmed by rogue elements of the Ecuadorian military or kidnapped by Colombian groups seeking a high ransom, then it follows that there is no reason why a different fate would befall these nine plaintiffs when the seventy-three plaintiffs who are indigenous inhabitants of the Oriente region in the *Lago Agrio* litigation have not suffered any retaliation. Assuming that plaintiffs' evidence (the newspaper articles) on the petition by the *Lago Agrio* attorneys to the Inter-American Commission on Human Rights is admissible, the evidence shows threats made against the two attorneys involved and the two indigenous leaders involved in *that* litigation — and against the public faces of the litigation, not the other *Lago Agrio* plaintiffs. Plaintiffs have submitted no evidence of what threats were made against those attorneys and whether those threats were reasonable and/or would be applicable to this situation with these plaintiffs.

### C. Plaintiffs' Vulnerability to Retaliation.

Accepting that plaintiffs live in a lawless region of the Amazon, it does not follow that the risks of living there are any greater by virtue of their involvement in this litigation.

### D. Prejudice to Defendants.

The Court must evaluate the precise prejudice pseudonymous plaintiffs would work on defendants at each stage of the proceedings. The balance may change at different points of the proceedings. The Ninth Circuit has noted this type of motion may impermissibly prevent defendants from mounting a defense. *Advanced Textile*, 214 F.3d at 1069. Here, plaintiffs have not asserted enough to establish a need for anonymity. This cannot outweigh the prejudice such an order would work on defendants, even at this stage of the proceedings. It certainly would not as the instant action moves forward, when defendants will need to mount a defense to plaintiffs' claims.

9

### E. How the Public's Interest in the Matter Would Best Be Served.

FRCP 10(a) requires that all complaints list the names of the parties. The purpose of this rule is not simply administrative, it is "to apprise the parties of their opponents, and it protects the public's legitimate interest in knowing all the facts and events surrounding court proceedings." *Doe v. Rostker*, 89 F.R.D. 158, 160 (D. Cal. 1981). When anyone — local or foreign — invokes the potential power and authority of a United States District Court, the public has a legitimate right to know on whose behalf their institutions are being used, unless good cause to do otherwise is shown. Such good cause has not been shown in this case.

### CONCLUSION

For the reasons stated above, plaintiffs' motion and renewed motion to proceed with action using pseudonyms is **DENIED**. By October 13, 2006, plaintiffs must refile the complaint to identify themselves. This order does not authorize any other amendments.

**IT IS SO ORDERED.**

Dated: October 5, 2006.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE