| | |
|---|---|
| INTERNATIONAL RIGHTS ADVOCATES<br>Terry Collingsworth, Esq.<br>Natacha Thys, Esq.<br>218 D Street, SE, 2nd Floor Annex<br>Washington, DC  20003<br>tc@iradvocates.org<br>nt@iradvocates.org<br>Tel: (202) 470-1654<br>E-Fax: (206) 338-2674 | LAW OFFICES OF CRISTOBAL BONIFAZ<br>Cristobal Bonifaz, Esq.<br>180 Maple Street<br>P.O. Box 180<br>Conway, MA  01341<br>cbonifaz@comcast.net<br>Tel: (413) 369-4263<br>Fax: (413) 369-0076 |
| WIGGINS, CHILDS, QUINN & PANTAZIS<br>Dennis G. Pantazis, Esq.<br>The Kress Building<br>301 - 19th Street North<br>Birmingham, Alabama 35203<br>dgp@wcqp.com<br>Tel: (205) 314-0531<br>Fax: (205) 314-0731 | WHATLEY DRAKE & KALLAS<br>Othni Lathram, Esq.<br>2001 Park Place North<br>Suite 1000<br>Birmingham, Alabama 35203<br>olathram@whatleydrake.com<br>Tel: (205) 328-9576<br>Fax:(205) 328-9669 |
| SCHONBRUN, DE SIMONE, SEPLOW, HARRIS & HOFFMAN, LLP<br>Paul L. Hoffman, Esq.<br>723 Ocean Front Walk<br>Venice, CA  90201<br>Hoffpaul@aol.com<br>Tel: (310) 396-0731<br>Fax: (310) 399-7040 | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gonzales, *et al.*,<br><br>       Plaintiffs,<br>v.<br><br>Texaco Inc., *et al.*<br><br>       Defendants. | CASE NO.: C 06-02820 WHA<br><br>**RESPONSE BY PLAINTIFFS' COUNSEL TO COURT'S ORDER TO SHOW CAUSE ON MONETARY SANCTIONS**<br><br>Hearing Date:  September 25, 2007<br>Time:  4:00 p.m.<br>Courtroom:  9, 19th Floor<br>Judge:  Hon. William H. Alsup |

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' counsel hereby respond to this Court's September 10, 2007 Order to Show Cause. Counsel respectfully submit that monetary sanctions are unwarranted. First and most importantly, the actual facts, in sharp contrast to Defendants' version, demonstrate that none of the lawyers for Plaintiffs acted in bad faith, and were unaware of the false claims asserted by Plaintiffs Chamba, Gonzales, and Rodriquez. Counsel can also assure the Court that this case was a legitimate effort to bring relief to Plaintiffs, whom they believed had cancer, and that they engaged in the proper due diligence, interviewing Plaintiffs on multiple occasions. It was not until their depositions did counsel learn of any fabrication by such Plaintiffs. Indeed, immediately upon learning of the false allegations, Plaintiffs' counsel were equally shocked and sought to work out with opposing counsel the means of dismissing such Plaintiffs, which would have resolved the dispute and correctly avoided the need to burden the Court. This is precisely why the 1983 amendments to Fed. R. Civ. P. 11 provide a "safe harbor" period to allow such cures to the record, as explained in Plaintiffs' Opposition to Defendants' Motion for Monetary Sanctions [Docket No. 246] ("Pls. Opp.").[1] Counsel's lack of bad faith and Defendants' failure to comply with the notice requirements of Rule 11 accordingly bar an award of monetary sanctions under Rule 11, as well as sanctions under this Court's inherent powers.

Indeed, this Court has already issued the ultimate sanction in this case – the individual claims that were based on false facts have been dismissed with prejudice. No legitimate purpose would be served by further sanctioning counsel for Plaintiffs. They have suffered personal and

---

[1] *See also Radcliffe v. Rainbow Constr. Co.,* 254 F.3d 772, 789 (9th Cir. 2001)(holding "[t]he Ninth Circuit strictly construes the safe harbor requirements of Rule 11(c)(1)(A), and considers the rule's specific procedural requirements to be mandatory"); *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998)(explaining that the "purpose of the safe harbor . . . is to give the offending party the opportunity, within 21 days after service of the motion for sanctions, to withdraw the offending pleading *and thereby escape sanctions")*(emphasis in original).
.

professional embarrassment at being duped by Lusia Gonzales and Gloria Chamba, and have themselves expended significant attorney time and resources in travel costs, deposition costs, and medical expert costs to find that their clients had mislead them. As small firms and a non-profit organization, this itself is already a significant loss.

Further, lost in the shuffle here is the undisputed fact that Defendants, as detailed in the First Amended Complaint, are responsible for massive pollution in the pristine rain forest of Ecuador, which has devastated the ecosystem and has caused untold physical injuries to the indigenous people who reside in the area. *See, e.g., Jota v. Texaco*, Inc. 157 F. 3d 153 (2d Cir. 1998). Defendants demonize Cristobal Bonifaz for being a tenacious environmental activist seeking to hold Chevron accountable for the devastation of the rain forest in his home country of Ecuador. Mr. Bonifaz readily admits and is proud to say that he has been a crusader against Chevron because the company knowingly committed a massive tort by introducing carcinogens into the rain forest of Ecuador, and the company has yet to be held accountable. Mr. Bonifaz's dedication does not extend to fabricating claims for cancer, yet Chevron explicitly bases its motion for sanctions on the incredible assertion that Mr. Bonifaz, and other counsel, "knew the claims in the complaint were false." Reply in Support of Defendants' Motion for Monetary Sanctions [Docket No. 250] ("Defs. Reply") at 1:10-11. *See also* Points and Authorities in Support of Defendants' Motion for Sanctions [Docket No. 239] ("Defs. Mot.") at 9 (asserting that "counsel manufactured this case").

Defendants have absolutely no evidence to level the extremely serious charge that Mr. Bonifaz fabricated the claims of Gonzalez and Chamba. Rather, they falsely characterize Mr. Bonifaz as a fanatic with a motive to "get" Chevron, and then make a huge leap of bad faith that a dedicated lawyer who has practiced law for over twenty years, who has never been sanctioned or accused of improper conduct and who has received praise from courts and colleagues, must have fabricated claims because he has an agenda to force Chevron to clean up its criminal mess

3

in Ecuador.[2] Then, in a guilt-by-association move that would make McCarthy blush, Chevron asserts that Plaintiffs' other counsel, Mr. Collingsworth and Mr. Hoffman, both highly-respected public interest lawyers with more than 55 years of practice between them without ever being sanctioned, must have been in on the fabrication because they signed the pleadings.[3] In short, however, not even Chevron's effort to concoct an improper motive for Mr. Bonifaz withstands the scrutiny of the actual facts, which evidence absolutely no "bad faith" on the part of Plaintiffs' counsel.

## II. THE ACTUAL FACTS ESTABLISH THERE IS NO "BAD FAITH" ON THE PART OF PLAINTIFFS' COUNSEL

The parties agree that to sanction Plaintiffs' Counsel in this situation, they must have acted in "bad faith." *See, e.g., Fink v. Gomez*, 239 F. 3d 989,994 (9th Cir. 2001)(cited in Defs. Reply at 3-4). *See also Barber*, 146 F.3d at 711 ("An award of sanctions under . . . the district court's inherent authority requires a finding of recklessness or bad faith. The district court expressly declined to make such findings. The evidence in the record supports the district court's ruling; it certainly shows ignorance or negligence on the part of [the attorney], but does not compel a finding that he was reckless or acted in bad faith. The district court did not abuse its discretion by declining to award sanctions under . . . its inherent authority.")(citing *In re Keegan Management Co.*, 78 F.3d 431, 436 (9th Cir.1996)); *Primus Autmotive Financial Servs, Inc v Batarase*, 115 F.3d 644, 648 (9th Cir. 1997)(("Before awarding sanctions under its inherent powers . . . the court must make an explicit finding that counsel's conduct 'constituted or was

---

[2] *See* Declaration of Cristobal Bonifaz Regarding Order to Show Cause on Monetary Sanctions ("Bonifaz Decl.") at ¶¶ 4, 5. The Bonifaz Declaration, as well as all other Declarations by counsel, are filed concurrently herewith the Response By Plaintiffs' Counsel Regarding Order to Show Cause on Monetary Sanctions.

[3] In this case, Mr. Hoffman has always acted as local counsel and relied upon representations by Mr. Bonifaz and Mr. Collingsworth about the factual and legal viability of this case. *See* Declaration of Terry Collingsworth Regarding Order to Show Cause on Monetary Sanctions ("Collingsworth Decl.") at ¶ 1, 6; Declaration of Paul Hoffman Regarding Order to Show Cause on Monetary Sanctions ("Hoffman Decl.") at ¶¶ 2, 3, 4.

4

tantamount to bad faith'. . . . Such a finding is especially critical when the court uses its inherent powers to engage in fee-shifting . . . The bad faith requirement sets a high threshold.")(citations omitted); *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993)("The Court . . . may not invoke [its inherent] powers 'without a specific finding of bad faith'")(citations omitted).

Defendants' assertions of bad faith are based largely on character assasination of Mr. Bonifaz. They assert that Mr. Bonifaz was fired by his clients in the Lago Agrio case, and then he fabricated claims to allow him to file this case as a form of retaliation. *See* Defs. Mot. at 2-3; Defs. Reply at 1.  Not even the first part of Defendants' theory is true – while Mr. Bonifaz did have a falling out with a political organization in Ecuador, El Frente, the Lago Agrio case is on behalf of 43 named individuals, and Mr. Bonifaz has valid attorney-client agreements with each of those 43 individuals. *See* Bonfiaz Decl. at ¶ 2 and Exhibits 1 and 2 thereto. Chevron has long had possession of these contracts, *id*, and surely knew when speculating about Mr. Bonifaz's motives that El Frente wa not a party plaintiff in the Lago Agrio case, and accordingly had no ability to terminate Mr. Bonifaz's representation of the 43 individual plaintiffs. What is undeniably true is that Mr. Bonifaz remains as counsel to the 43 individual Lago Agrio Plaintiffs, and that case presents the potential for a massive judgement against Chevron. Further, Mr. Bonifaz, along with Mr. Collingsworth, provided *pro bono* representation to the Republic of Ecuador in a New York case in which Chevron's effort to shift liability for its massive tort violations to the Government of Ecuador was defeated. *See Republic of Ecuador v. Chevron, Inc.*, 2007 U.S. Dist LEXIS 44564 (S.D. NY 6-19-07). Chevron was not happy about that either.

That the remaining claims in this case have proven to be viable factually, and are slated to go to trial on January 21, 2008, should at least allow for the prospect that, Chevron's libelous speculation as to his motive aside,  Mr. Bonifaz was in fact motivated to find meritorious claims, take them to trial, and win a damage award against Chevron for its wrongful conduct in Ecuador. It is Chevron that is motivated to destroy Mr. Bonifaz's reputation because he has lead the effort to bring the company to justice.

Defendants other major assertion is that, up to the May, 2007 depositions of Chamba and Gonzales, counsel for Plaintiffs did nothing to verify their initial factual allegations, and therefore must have known the allegations were false. *See* Defs. Mot. at 3-4; Defs. Reply  at 1. This also is demonstrably false. First, there is absolutely nothing improper, legally or ethically, about a team of lawyers who all know each other well, and who regularly work together, to rely upon one another for discreet tasks in the litigation process. *See, e.g., Refac Int'l, Ltd. v. Hitachi, Ltd.*, 141 F.R.D. 281, 287 (D. Cal. 1991)("Reliance on forwarding counsel may satisfy an attorney's duty of reasonable inquiry"). Mr. Bonifaz and Dr. Pena have known each other for 63 years and often collaborate on legal work. *See* Bonifaz Decl. ¶ 6. Mr. Collingsworth and Mr. Bonifaz have been working together since 1995 when they first began a collaboration in the Unocal litigation involving forced labor issues in Burma. *See Doe v. Unocal, Corp.*, 395 F. 3d 932 (9th Cir 2002), *appeal dismissed*, 403 F. 3d 708 (9th Cir. 2005)(the case was settled while *en banc* review was pending).  *See also* Collingsworth Decl. ¶ 2. Mr. Collingsworth and Mr. Hoffman have known each other since before 1990, became co-lead counsel in the *Unocal* litigation, and currently are co-counsel in six major human rights cases in various federal courts. *Id.*; Hoffman Decl. at ¶ 4.  As previously noted in the record, Mr. Collingsworth has also worked with both of the Alabama firms in this case since approximately  2002. Collingsworth Decl. at ¶ 2.

While Chevron attempts to twist Mr. Bonifaz's assertion that he relied upon Dr. Pena's initial assessment of the viability of the claims, *see* Defs. Mot. at 10, Mr. Bonifaz was not "blaming" Dr. Pena. Indeed, Dr. Pena likewise did not learn of the false claims until the depositions were taken. *See* Declaration of  Dr. Gerardo Pena Matheus Regarding Order to Show Cause on Monetary Sanctions ("Pena Decl.") at ¶ 3; Bonifaz Decl. at ¶ 7.  Mr. Bonifaz was merely saying that, with the benefit of hindsight, he should not have relied so heavily on Dr. Pena. That's the key concept – ***with the benefit of hindsight*** – because as we all look back on what happened knowing of the fabricated claims, the clear preventive solution would have been

to get a full medical exam at the outset. However, at the time the claims were filed, no one could have reasonably anticipated that any person would have simply fabricate claims (at least not in the collective experience of the lawyers for Plaintiffs). Unfortunately, there was no shortage of people in the area of Defendants' oil exploration area who did have cancer. The major concerns of Plaintiffs' counsel were not whether a perspective Plaintiff had cancer, but whether the cancer was within the statute of limitations, and whether the cancer was caused by Defendants' conduct. Indeed, Dr. Pena initially presented Plaintiffs' counsel with seven people, and two were rejected as their claims were clearly outside the statute of limitations. Pena Decl. ¶ 1.

Given the logistical barriers to representing indigenous people in the Ecuadoran rainforest, the system of cooperation between Plaintiffs' counsel and Dr. Pena's office functioned well and has otherwise allowed us to meet the expedited discovery schedule in this case. We will be ready for trial on January 21, 2008. The system simply did not anticipate the extreme situation of a fabricated claims by certain desperate former plaintiffs, and there is no dispute that there was a fabrication. The question on the sanctions motion is who did the fabricating? Chevron's position is that counsel for Plaintiffs, all experienced attorneys with unblemished records and distinguished careers, risked their very livelihoods and simply made up the claims, necessarily thinking that Jones Day and all of the resources of one of the world's largest oil companies, would not discover such a lie. To say the least, such a scenario is absurd.

The infinitely more plausible position is that Lusia Gonzales and Gloria Chamba falsely told Plaintiffs' counsel and their team that they had cancer claims so that they could participate in a lawsuit that might have brought medical care to their village and a damage recovery for them. When confronted with the medical evidence, and realizing they had been caught, they were reluctant to admit to lying, so they claimed ignorance. This version is fully consistent with the actual conduct of Plaintiffs' counsel. There is no question that Plaintiffs' counsel initially relied upon Dr. Pena for the identification of the cancer victims, but after that, counsel was in constant

contact with the Plaintiffs, mainly through the translator and paralegal, referred to by the Plaintiffs as Ms. Theresa.

Plaintiffs' counsel worked with the Plaintiffs, through Ms. Theresa, to initially respond to Defendants Interrogatories and Requests for Production of Documents. Defendants moved to compel additional responses, which the Court ordered, and Plaintiffs' counsel again worked with Plaintiffs to supplement the responses. Collingsworth Decl. at ¶ 5. Prior to the depositions in May, 2007, Mr. Lathram and Mr. Pantazis spent a week in Ecuador and interviewed the Plaintiffs and other witnesses. Nothing in this process of investigation revealed Gonzales or Chamba's fabrications or their exact medical condition. Following this trip, Plaintiffs' counsel amended the interrogatory responses out of an abundance of caution and scheduled full medical examinations to coincide with their depositions in Quito. There was a question about the exact medical condition underlying the claims of Gonzales and Chamba, not that there was no basis for their claims and their assertions were fabricated. Again, Plaintiffs' counsel were in good faith keeping Chevron apprised of the facts as they understood them. This was not simply a process of filing the Complaint and then the Plaintiffs were deposed a year later; Plaintiffs' counsel repeatedly verified the alleged facts with the Plaintiffs.

Chevron also asserts that the paper trail was so obvious that counsel for Plaintiffs had to have known of the false claims. *See* Defs. Mot. at 6-7. However, if it was that obvious, then Chevron's lawyers should have known as well because, well before the May, 2007 depositions, they had every document that they now say should have revealed the fraud. *See* Pls. Opp. at 3-4 (referring to exhibits A-E of the 8-23-07 Collingsworth Declaration [Docket No. 247]). Based not only on the written record, which Chevron also had, but on the process of investigating the facts, preparing responses to discovery requests, and preparing for the depositions, it is safe to say that counsel for Plaintiffs were ***more*** surprised than Defendants to learn of the fabrication.

Counsel for Plaintiffs could be faulted, ***with the benefit of hindsight***, for accepting the assertions of all of the Plaintiffs about their cancer-related claims. Whether it was reasonable to

accept as truthful repeated assertions about the medical condition of Gonzales and Chamba can be debated. However, ***Defendants do not accuse Plaintiffs' counsel of being careless – they base their claim of bad faith on the assertion that counsel for Plaintiffs actually fabricated the Gonzales and Chamba claims***. Defs. Mot. at 9; Defs. Reply at 1. There is nothing in the record to support Chevron's spurious accusations. Even the anchor fact about Mr. Bonifaz's motivations that Defendants use to springboard to their extreme character assasination is not supported by evidence. Defendants' willingness to accuse their nemesis, Mr. Bonifaz, of serious misconduct and attack his character without any evidence, or place the unblemished reputations of Plaintiffs' counsel at issue, is itself serious misconduct.

### III. CONCLUSION

Plaintiffs' counsel did not oppose the extreme sanction of dismissing the claims by Gonzales, Chamba, or Rodriquez, despite evidence that they or their close family members may develop illnesses related to toxic pollution. This was the appropriate sanction in this unusual situation. Counsel for Plaintiffs do not need to be deterred or punished for events that totally surprised them, have already embarrassed them, and that have already caused them to expend considerable attorney time and resources.  *See* Bonifaz Decl. at ¶ 8; Collingsworth Decl. at ¶ 7. Plaintiffs' counsel can assure the Court that there is absolutely no chance that any of them will place themselves in a situation where their good faith efforts to promote the public interest through law could be jeopardized by false assertions made by others.  We accordingly urge that Defendants' Motion for Monetary Sanctions be denied in its entirety, including the levy of any attorney fees and litigation costs.

Respectfully submitted on this 17th day of September, 2007 by:

/s/Terry Collingsworth

_____
Terry Collingsworth,
*Counsel for Plaintiffs*