1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LUISA GONZALES, et al.,                    No. C 06-02820 WHA

       Plaintiffs,

  v.

TEXACO, INC., TEXACO PETROLEUM          **ORDER GRANTING MOTION**
COMPANY, INC., and CHEVRON              **FOR SUMMARY JUDGMENT**
CORPORATION,                            **AGAINST PLAINTIFFS CADENA**
                                        **AND ZAMBRANO**
       Defendants.
_____/

**INTRODUCTION**

In this action alleging cancer caused by defendants' oil-drilling operations in the

Amazon rainforest, defendants Texaco, Inc., Texaco Petroleum Company, Inc., and Chevron

Corporation move for summary judgment against the only remaining plaintiffs, Luz Armas

Cadena and Maria Cano Zambrano, on the ground that the statute of limitations bars the claims.

The original complaint was filed on April 25, 2006. Applying California's statute of

limitations, the two-year limitations period expired for plaintiffs Cadena and Zambrano before

commencement of their action. Defendants' motion for summary judgment is therefore

**GRANTED**.

**STATEMENT**

1.    **PLAINTIFFS' ILLNESSES.**

The evidence show conclusively that the remaining plaintiffs' claims against defendants

arose more than two years prior to the commencement of this action, as now set forth in detail.

United States District Court

For the Northern District of California

1

**A.      Plaintiff Luz Armas Cadena.**

2      Plaintiff Cadena first felt pain and discomfort in the mid-1970s.  When asked whether

3 she began having problems with her throat about 1975, she responded, "Perhaps it was around

4 those years when I started with discomforts.  Of course, I don't remember exactly the years.

5 But I arrived healthy and felt pain in my throat.  Perhaps it was a cold" (Rector Decl. Exh. 5

6 at 148–39).  The problem with her throat continued.  She stated in her deposition, "In 1988 then

7 you could notice a small ball, a small ball" (*id.* at 141).

8      On April 1, 2003, she underwent thyroid surgery in Quito, Eugenio Espejo Hospital

9 (Lathram Decl. Exh. 2).  In her deposition, Plaintiff Cadena stated, "In the surgery it already

10 came out that I already had cancer.  When they removed from here, they did a biopsy

11 (indicating).  And when I was discharged, they gave me the report where actually the cancer

12 was confirmed."  The doctor also told Plaintiff Cadena that the thyroid they removed had

13 cancer.  She said that she was unable to return to the hospital after a month because she lived

14 too far away, and the doctor seemed "kind of upset, [and] he told [her] 'Ma'am, you have

15 cancer, you need to do the treatment'" (Rector Decl. Exh. 5 at 231–32).

16      When Plaintiff Cadena was at home after the surgery, a doctor arrived — and she was

17 unclear where he was from — who offered to treat her for free.  His visit took place about eight

18 months after her operation, in December 2003 (*id.* at 152, 156).  *He read her "papers" and*

19 *said, "Yes, you do have cancer, ma'am."  She asked him, "Is it true that my disease is due to*

20 *the contamination?  I lived here after so many years next to the oil.  Now I'm ill with cancer."*

21 *The doctor replied, "Yes, probably . . . [T]his is the contamination that we've lived with,*

22 *all these people, but I can't help you anymore with medications"* (*id.* at 152).

23

**B.      Plaintiff Maria Cano Zambrano.**

24      Plaintiff Zambrano's first tumor appeared in 1978.  She underwent treatment and the

25 tumor "went away" in 1979.  In 2000, some tumors appeared on her breasts and she received

26 treatment from the SOLCA Center of Portoviejo (Rector Decl. Exh. 10 at 5–6).

27      In February 2002, plaintiff Zambrano went to Joya De Los Sachas Subcenter because

28 she experienced heavy vaginal bleeding.  She did not recall the next time she went to a doctor.

2

**United States District Court**
For the Northern District of California

1     There is haziness in the record as to what Plaintiff Zambrano knew before summer 2003

2   (*see* Rector Decl. Exh. 8 and Exh. 9), but it is undisputed that Plaintiff Zambrano knew of the

3   cancer by the time of her operation in June or July 2003.[*]

4        In summer 2003, Plaintiff Zambrano had surgery in Portoviejo hospital to remove her

5   uterus (Rector Decl. Exh. 10 at 6). Before and after the operation, her doctor told her that

6   Texaco had caused her cancer, as follows (Rector Decl. Exh. 8 at 271–72, 277):

7         Q:  You blame the cancer that you got on Texaco; correct?

8         A:  Yes.

9         Q: *Has any doctor ever told you that your cervical cancer was*
            *caused by Texaco?*

10

11         A:  *Yes.  They told me that it was due to the oil.*

12         Q: Who is "they?"

13         A: The doctor that did the operation.

14         Q: What is his name?

15         A: The doctor — I don't remember what his name is.

16         Q: You don't remember what the doctor who operated on your
            uterus' name is?

17         A: No.

18         Q: What hospital was he with?

19         A: In the hospital at Porto Viejo.

20         Q: *When was this?*

21         A: *In 2003.*

22         Q: *When in 2003?*

23         A: *The month that they operated on me?*

24         Q: *Yes.*

25         A: *In the month of June.*

26                           *            *            *

27

28       [*] There is some inconsistency as to the exact time of her operation.  According to her deposition, the operation occurred in June 2003 (Rector Decl. Exh. 8 at 271–72).  According to her interrogatory, however, the operation occurred in July of that year (Rector Decl. Exh. 10 at 6).  The discrepancy is immaterial.

Q:  Was it before your surgery that the doctor who operated on you told you that your cervical cancer was caused by petroleum?

A:  Yes.  He told me before the operation, and then after the operation, when the doctor had gotten all the results.

Q:  So he first told you before the operation that your cervical cancer was caused by petroleum; correct?

A:  Yes.

Q:  And then after the operation he told you a second time that your cervical cancer was caused by petroleum; correct?

A: Yes.

She was sent back to SOLCA for chemotherapy but could not afford the full treatment (Rector Decl. Exh. 10 at 6).  When asked in her May 2007 deposition when was the first time that she heard about a case against Texaco regarding the alleged contamination in the Oriente, she answered, "It's about 10 years ago."  She heard that "there was a trial against Texaco due to the damages caused in the Amazonia" (Rector Decl. Exh. 7 at 81–82)

## 2.   PROCEDURAL HISTORY.

Plaintiffs' counsel filed the original complaint on April 25, 2006, based on diversity jurisdiction pursuant to 28 U.S.C. 1332.  An amended complaint was filed on July 28, 2006.  Defendants moved to dismiss the amended complaint as time-barred under Ecuador and California law (Doc. 60 at 4–8).

Two orders were issued on the motion to dismiss.  The first order, dated September 26, 2006, deferred ruling on the Ecuador-law argument pending an evidentiary hearing on Ecuador's statute of limitations.  With respect to the California-law argument, the Court stated, "[P]ursuant to the policies recognized in *Deutsch*, if the applicable statute of limitations in California would bar the instant claim, it is highly likely that plaintiffs' claims should be dismissed."  That order found that the applicable statute of limitations in toxic-tort cases in California was Section 340.8(a) of the California Code of Civil Procedure, which provided a two-year limitations period "for cases similar to the instant one."  The order further stated, "[E]ven if after the evidentiary hearing Ecuador's statute of limitations is found to permit the instant action, the action would be barred if it is untimely under the California

4

**United States District Court**
For the Northern District of California

1    statute of limitations" (Rector Decl. Exh. 3 at 5–6).  Because the initial complaint was filed in

2    April 2006, the case would be barred under California law if the claims arose before April 2004.

3    (Alternatively, under the four-year Ecuador statute of limitations, the suit would be barred if the

4    claims arose before April 2002.)  The order did not rule on the California-law issue because

5    there were not enough facts to indicate "*when* plaintiffs suspected either (1) the physical cause

6    of the injury or (2) that the injury was caused by defendants' decades-conduct" (*id.* at 8).

7         The Court held the evidentiary hearing on Ecuador law on October 4, 2006.

8    Plaintiffs and defendants each presented an attorney from Ecuador as an expert witness on

9    Ecuador civil law.  The declarations previously submitted constituted their direct testimony.

10   Each witness was cross-examined, re-directed, and re-crossed.  After the evidentiary hearing,

11   the Court issued a second order as to the law in Ecuador.  The order held, "[T]he limitations

12   period did not begin to run, as to any individual plaintiff, until the pollution actually produced

13   cancer in that individual.  As soon as it did produce cancer in an individual, whether detected or

14   not, then the four-year period began to run.  Although plaintiffs have the burden to prove they

15   have cancer and why, defendants have the burden, as the proponent of the affirmative defense,

16   to prove the onset of cancer was before April 25, 2002, *i.e.*, more than four year prior to

17   commencement of this action" (Rector Decl. Exh. 4).

18        Both parties have now had full opportunity for discovery.  Defendants move for

19   summary judgment against Plaintiffs Cadena and Zambrano on the grounds that plaintiffs'

20   claims arose outside California's two-year statute of limitations.  At the hearing held on

21   November 15, 2007, plaintiffs conceded that, if the two-year limitation period were to apply,

22   their claims would be absolutely barred.

23                                    **ANALYSIS**

24        Summary judgment is granted when "the pleadings, depositions, answers to

25   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

26   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

27   matter of law."  FRCP 56(c).  A district court must determine, viewing the evidence in the light

28   most favorable to the nonmoving party, whether there is any genuine issue of material fact.

5

*Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007).  A genuine issue of fact is one that could reasonably be resolved in favor of either party.  A dispute is "material" only if it could affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The moving party "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F. 3d 1099, 1102 (9th Cir. 2000).  When the moving party meets its initial burden, the burden then shifts to the party opposing judgment to "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## 1. DOES THE CALIFORNIA OR ECUADOR STATUTE OF LIMITATIONS APPLY?

Defendants claim that plaintiffs' claims are time-barred by California's two-year statute of limitations, as provided in Section 340.8(a) of the California Code of Civil Procedure. Plaintiffs counter that it is the longer limitations period under Ecuador law — not California law — that governs the claims in this case.  Article 2235 of the Ecuador Civil Code imposes a four-year limit that is counted "from the date on which the act was perpetrated."  Here, the Court disagrees with plaintiffs' arguments.

Federal courts exercising diversity jurisdiction apply the statute of limitations that the forum state would apply.  *See Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964 , 966 (9th Cir. 1993).  As discussed in the order issued in September 2006, the Ninth Circuit has stated:

> California applies the "governmental interest" approach to conflict of law issues.  Under this approach, the correct choice of law depends on "an analysis of the respective interests of the states involved."  Where the conflict concerns a statute of limitations, the governmental interest approach generally leads California courts to apply California law, and especially so where California's statute would bar a claim.  *California's interest in applying its own law is strongest when its statute of limitations is shorter than that of the foreign state, because a "state has a substantial interest in preventing the prosecution in its courts of claims which it deems to be 'stale.'* Hence, subject to rare exceptions, the forum will dismiss a claim that is barred by its statute of limitations." [. . . .] Only an

United States District Court
For the Northern District of California

1  extraordinarily strong interest of a foreign state in keeping these
2  claims alive could overcome the presumption that California will
   not hear claims that have been stale for so long under its own law.

3  *Deutsch v. Turner*, 324 F.3d 692, 716–17 (9th Cir. 2003) (citations omitted) (emphasis added).

4  In *Deutsch*, plaintiffs alleged that they were forced to work as slave laborers for German and

5  Japanese corporations during the Second World War.  *Id.* at 703.  The Ninth Circuit had found

6  that all the claims in the case, other than those under the Alien Torts Claims Act, had been stale

7  for several decades under the applicable California statute of limitations.  *Id.* at 717.

8  Under *Deutsch*, this order must use the statute of limitations under California law.  In

9  the instant case, California's statute of limitations is shorter than that of Ecuador's; while the

10 Ecuador limitations period is four years in length, California's is only two years.  Plaintiffs do

11 not dispute the length of California' statute of limitations under Section 340.8(a).

12 Furthermore, plaintiffs have made no showing that the case is a "rare exception" or that there is

13 an "extraordinarily strong interest of a foreign state in keeping these claims alive."

14 There may have been some confusion as to the applicable law since both parties had

15 alluded to California's "borrowing statute," which provides:

16  When a cause of action has arisen in another State, or in a foreign
    country, and by the laws thereof an action thereon cannot there be
17  maintained against a person by reason of the lapse of time,
    an action thereon shall not be maintained against him in this State.

18 Cal. Code of Civ. Proc. § 361.  The claim did arise in a foreign country, and the plaintiffs are

19 Ecuador citizens and residents who were allegedly injured by pollution caused by oil-drilling

20 operations in that country.  This borrowing statute, however, only states that an action arising in

21 a foreign country cannot be maintained within California if the action were time-barred under

22 the laws of the foreign country; the statute *does not* state whether California or foreign law

23 governs when the laws conflict and California's statute of limitations is shorter.  *Deutsch* is

24 directly on point: where the conflict of laws concerns a statute of limitations, California courts

25 generally apply California law — and the state's interest in applying its own law is strongest

26 when its statute of limitations is shorter than that of the foreign country.

27 In its opposition to a previous motion to dismiss by defendants, filed on

28 August 31, 2006, plaintiffs conceded that California law applied.  They stated, "California law

7

United States District Court

For the Northern District of California

applies here under the general rule that a forum state will apply its own statutes of limitations to actions commenced in its courts" (Doc. 65 at 9 n. 7).  Plaintiffs further stated, "In this case, the applicable California statute of limitations is set forth at California Code of Civil Procedure § 340.8, which provides a special statute of limitations for all 'civil action[s] for injury or illness based upon exposure to a hazardous material or toxic substance'" (*id.* at 10) (citation omitted).

Plaintiffs have altered their tune and now argue that the California law does *not* apply. They claim that a presumption exists against extraterritorial application of a California statute "with respect to occurrences outside the state . . . unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *North Alaska Salmon Co. v. Pillsburgy*, 174 Cal. 1, 4 (1916).  *North Alaska Salmon*, which addressed the Workmen's Compensation, Insurance and Safety Act and did not discuss any statute of limitations, is inapplicable.  *Deutsch* controls; there, the Ninth Circuit expressly stated the presumption in favor of California law when its statute of limitations was shorter than that of the foreign country.  California had a substantial interest in preventing the prosecution of stale claims.  Furthermore, in *Deutsch*, the alleged injuries all took place outside of California, yet Ninth Circuit still followed California's "governmental interest" approach to conflict-of-law issues.

The second case cited by plaintiffs is *Cruz v. United States*, 387 F.Supp.2d 1057 (N.D. Cal. 2005) (Breyer, J.).  Plaintiffs contend that the district court in *Cruz* indicated that the limitations period set forth in the California bank deposit statute "would not constitute the governing law in this case if [the California statute extending limitations period for filing claims for savings funds earned pursuant to braceros program] were not to apply.  Nothing on the face of the California bank deposit statute of limitation makes it apply extraterritorially. More importantly, absent [the California braceros statute], the governing statute of limitations would be California's borrowing statute, which if applicable would require the Court to apply Mexico's statute of limitations because the claims arose in Mexico and all plaintiffs were citizens of Mexico when their claims arose."  *Id.* at 1080 n. 16.  Plaintiffs analogize *Cruz* to the situation here — claiming that nothing on the face of the Section 340.8(a) makes it apply

8

1    extraterritorially.  The governing statute of limitations should therefore be California's

2    borrowing statute, which directs the Court to apply Ecuador law, they argue.

3        *Cruz* is distinguishable.  In *Cruz*, a district court applied the California braceros statute,

4    which effectively provided for no limitations period.  If Mexico law had prevailed, plaintiffs'

5    claims would have been barred by a ten-year statute of limitations.  As pointed out by plaintiffs,

6    the district court stated that, without the California braceros statute directly addressing the

7    statute of limitations, the California borrowing statute would have governed.  And according to

8    the California borrowing statute, Mexico law would have prevailed.  *Cruz* presented a situation

9    where the foreign statute of limitations was *shorter* than the California statute of limitations.

10   Here, it is the opposite: the *California* statute of limitations is the shorter.  Hence, *Deutsch*

11   governs, and the California statute of limitations applies.

12       At the November 15 hearing, plaintiffs cited two additional cases, *Kearney v. Salomon*

13   *Smith Barney, Inc.,* and *Handel v. Artukovic*.  Neither case is helpful to plaintiffs' position.

14   In *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal 4th 95, 107–8 (2006), the state court stated

15   that the "governmental interest approach" generally involved three steps:  (i) the court

16   determines whether the relevant laws of each of the potentially affected jurisdictions with

17   regard to the particular issue in question are different; (ii) if they were different, the court

18   examines each jurisdiction's interest in the application of its own law under the circumstances

19   of the particular case to determine whether a true conflict exists; and (iii) if the court finds that

20   there is a true conflict, it carefully evaluates and compares the nature and strength of the interest

21   of each jurisdiction in the application of its own law to determine which state's interest would

22   be more impaired if its policy were subordinated to the policy of the other state and then

23   ultimately applies the law of the state whose interest would be the more impaired if its law were

24   not applied. (The state court eventually found that California law — and not Georgia law —

25   governed the case.)  *Kearney*, however, had nothing to do with the statute of limitations, which

26   was explicitly addressed in *Deutsch*.

27       In *Handel v. Artukovic*, 601 F.Supp. 1421 (C.D. Cal. 1985) (Rymer, J.), the district court

28   of the Central District of California applied California conflict-of-law principles to determine

whether the California or longer Yugoslavian statute of limitations should govern plaintiffs'

claims (which were based on alleged violations of the laws of war and laws of humanity).

The district court held that California's law applied because California law emphasized the

interest of the defendant and forum court in barring stale claims, and the facts indicated that

plaintiffs had slept on their rights for several decades.  601 F. Supp. at 1432.  Plaintiffs argue

that the district court in *Handel* applied the California law primarily because the claimants in

*Handel* slept on their rights for more than thirty years; the instant case was distinguishable, they

say, because plaintiffs had only fallen outside the limitations period by one or two years.

Again, *Handel* does not help their position.  *First*, the district court still applied California law

rather than the Yugoslavian law.  *See id.* at 1435.  *Second*, the district court explicitly stated,

"under California law, the limitations statute of the foreign jurisdiction is not applicable where

it provides for a longer period than the relevant California statute."  *Id.* at 1434.  *Third*, the

district court did not say that the thirty-year delay was the sole reason for applying California

law; it also addressed how the California public policy behind its limitation statutes indicated

that California would decline to apply the longer Yugoslavian statute.  *Fourth*, the district court

never said that it would apply the foreign statute of limitations had the delay been of a shorter

duration.  Plaintiffs' arguments are unavailing and this order finds that the California statute of

limitations applies, as was conceded in plaintiffs' opposition to defendants' earlier motion to

dismiss the amended complaint.  *See* Doc. 65 at 9–10.

**2.  ARE PLAINTIFFS' CLAIMS TIME-BARRED UNDER CALIFORNIA LAW?**

This Court stated in its September 2006 order that the applicable statute of limitations in

toxic-tort cases in California is Section 340.8(a) of the California Code of Civil Procedure.

Section 340.8(a) provides:

> In a civil action for injury or illness based upon exposure to a
> hazardous material or toxic substance, the time for commencement
> of the action shall be no later than either two years from the date of
> injury, or two years after the plaintiff becomes aware of, or
> reasonably should have become aware of (1) an injury, (2) the
> physical cause of the injury, and (3) sufficient facts to put a
> reasonable person on inquiry notice that the injury was caused or
> contributed to by the wrongful act of another, whichever occurs
> later.

United States District Court

For the Northern District of California

This action would be barred if it were untimely under the California's two-year statute of limitations. California's discovery rule "postpones accrual of a cause of action until the plaintiff discovers or has reason to discover the cause of action." *Nogart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999). The September 2006 order stated that Section 340.8(a) codified the discovery rule because it established that the statute of limitations began when the plaintiff "becomes aware of, or reasonably should have become aware of" a cause of action.

The initial complaint in this suit was filed on April 25, 2006. Under California law, the claim had to have arisen on or after April 25, 2004, in order to be valid. Defendants have produced clear-cut evidence that California's statute of limitations lapsed before plaintiffs brought their claims.

In Plaintiff Cadena's case, even when the evidence is construed in the light most favorably to her, *Plaintiff Cadena knew that she had cancer around the time of her surgery in April 2003*. According to her own words, "'[i]n the surgery it already came out that [she] already had cancer . . . And when [she] was discharged, they gave [her] the report where actually the cancer was confirmed" (Rector Decl. Exh. 5 at 231–32). After her surgery, she was visited by a doctor in December 2003 (*id.* at 155–56). *When she asked the doctor whether it was true that her "disease [was] due to the contamination," he answered, "Yes, probably"* (*id.* at 152). These events all took place before April 2004 — when the California limitations period expired. Plaintiffs have provided no evidence to the contrary. As a matter of fact, in their opposition, they state, "In 2003, Ms. Cadena had surgery and was diagnosed with thyroid cancer" (Opp. at 3). There is no genuine issue of material fact.

In Plaintiff Zambrano's case, she certainly knew about her cancer by summer 2003. According to her deposition, before and after her summer 2003 operation to remove her uterus, *a doctor told her that her "cervical cancer was caused by Texaco"* (Rector Decl. Exh. 8 at 271–72, 77). Given the doctor's statements, she must have also learned about the physical cause of the injury and obtained sufficient facts to be on inquiry notice that the injury was caused by the wrongful act of another — namely, Texaco's oil-extraction activities. She had first heard about lawsuits being brought against Texaco concerning contamination in the

11

1  Oriente about "ten years ago."  Plaintiffs not only did not object to but confirmed the date of

2  diagnosis in the opposition.  Plaintiffs stated, "Ms. Zambrano experienced pelvic pain and

3  hemorrhaging and was ultimately diagnosed with cervical cancer when she had surgery in

4  2003" (Opp. at 4).  No dispute of material fact exists here.  Despite the seriousness of Plaintiff

5  Zambrano's claims, they are unfortunately time-barred by California's statute of limitations.

6                                              **CONCLUSION**

7          Because the California's two-year statute of limitations applies, both plaintiffs' claims

8  are time-barred.  Had these actions been brought in Ecuador instead of California, these two

9  cancer victims might have prevailed on the merits.  Their counsel, however, filed these actions

10  in California, for reasons that have more to do with internecine quarrels among Texaco's

11  antagonists than the interests of their plainitffs.  As laid out in the order dated October 16, 2007,

12  these plaintiffs may not have been even informed that counsel were going to file their suit in

13  America using their names.  *See Gonzales v. Texaco*, 2007 WL 3036093, *3–5 (N.D. Cal.

14  2007).  Conceivably, a court in Ecuador might allow these plaintiffs to re-activate their cases

15  there.  But these actions are time-barred here.  Defendants' motion for summary judgment

16  against Plaintiffs Cadena and Zambrano must be **GRANTED**.  Plaintiffs' counsel are ordered

17  promptly to provide a copy of this order with a translation to each plaintiff and to file herein a

18  certification that this has been done within ten calendar days.  Now that summary judgment has

19  been granted against the remaining plaintiffs in this action, the remaining motions are moot and

20  denied as such.  No other claims remaining, this action is now over and the file shall be closed.

21  Judgment shall be entered.

22

23          **IT IS SO ORDERED.**

24

25  Dated:  November 15, 2007.

26                                                                WILLIAM ALSUP
                                                                  UNITED STATES DISTRICT JUDGE

27

28